IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BETH TYSON,<br>    Plaintiff,<br><br>       v.<br><br>ACCESS SERVICES,<br>    Defendant. | CIVIL ACTION<br><br><br><br>NO. 15-4653 |

<u>**MEMORANDUM RE: DEFENDANT'S MOTION TO DISMISS**</u>

**Baylson, J.**                                                                                                          **January 25, 2016**

### I.      INTRODUCTION

In this employment discrimination and retaliation case, plaintiff Beth Tyson ("Ms. Tyson" or "Plaintiff") alleges that defendant Access Services ("Access" or "Defendant"), her former employer, violated the Americans With Disabilities Act ("ADA" or the "Act") by discriminating against her for her association with qualified individuals, as that term is used in the Act, and for retaliation against her. Access has moved to dismiss Ms. Tyson's complaint in its entirety under Federal Rule of Civil Procedure ("Rule") 12(b)(6), arguing that it fails to state a claim upon which relief can be granted. For the following reasons, the Court will grant Access's motion and dismiss Ms. Tyson's complaint with leave to replead.

### II.      PROCEDURAL HISTORY

Ms. Tyson filed her complaint (the "Complaint") on August 14, 2015. (Compl., Dkt. 1). Ms. Tyson's two-count Complaint alleges violations of the ADA based on Access's discrimination for her association with—and advocacy for—Access's disabled clients, and retaliation. (Compl. 4-6).

1

Access filed the present Motion to Dismiss under Rule 12(b)(6) on October 23, 2015 (Def.'s Mot. to Dismiss ("Def.'s Br."), Dkt. 3). Ms. Tyson filed a response on November 9, 2015 (Pl.'s Response in Opp'n ("Pl.'s Opp'n"), Dkt. 5), to which Accesss responded in further support of its Motion on November 16, 2015 (Def.'s Reply to Pl.'s Response ("Def.'s Reply"), Dkt. 7).

### III.   FACTUAL ALLEGATIONS

In considering this motion to dismiss, the Court accepts Plaintiff's well-pleaded factual allegations as true.

Ms. Tyson was employed by Access for almost four years, during which time she acted as Lifesharing Coordinator. (Compl. ¶ 7). As Lifesharing Coordinator, Ms. Tyson's responsibilities included arranging services for disabled clients, which disabilities included bipolar disorder, schizophrenia, autism, and cerebral palsy. (Compl. ¶¶ 9-10). Through her role as Lifesharing Coordinator, Ms. Tyson advocated for the rights of these disabled clients. (Compl. ¶ 11). In her role as Lifesharing Coordinator, Ms. Tyson received favorable performance reviews. (Compl. ¶ 23).

In late 2013, a new supervisor started. (Compl. ¶ 12). Thereafter, Ms. Tyson was repeatedly prevented from providing necessary assistance to Access's disabled clients. (Compl. ¶ 12). First, Ms. Tyson fought to keep a disabled patient with cerebral palsy at home when Access opted for the cheaper option of placing the client in a nursing home. (Compl. ¶ 13). Second, Access charged a disabled client's provider for bed bug removal over Ms. Tyson's objection that the cost of the bed bug removal should be borne by Access. (Comp. 13). Finally, when Access demanded Ms. Tyson prohibit a client with slight mental retardation from driving,

Ms. Tyson complained that such action was not only illegal but detrimental to the client's well-being. (Compl. 13).

Around this same time, Ms. Tyson complained to her supervisors that Access was not only failing to meet the needs of disabled clients, but also discriminating against them. (Compl. ¶ 14). After such complaints, Access faulted Ms. Tyson's performance and disciplined her. (Compl. ¶¶ 16-17). On December 17, 2013, Access suspended Ms. Tyson without pay. (Compl. ¶ 18). When Ms. Tyson inquired as to the cause of her suspension, she received a perfunctory "I don't know" in response. (Compl. ¶ 19). On January 14, 2014, Access terminated Ms. Tyson. (Compl. ¶ 20). Ms. Tyson alleges that there are other employees, similarly situated to her but who did not advocate for the rights of disabled clients, who Access did not unjustly discipline. (Compl. ¶ 27).

On September 24, 2014, Ms. Tyson filed a Charge alleging disability discrimination with the Equal Employment Opportunity Commission ("EEOC"), and received a right to sue letter. (Compl. ¶ 4).

### IV.     JURISDICTION AND STANDARD OF REVIEW

The Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2).

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court may look only to the facts alleged in the complaint. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir.1994). The Court must accept as true all well-pleaded allegations in the complaint and view them in the light most favorable to the plaintiff. Angelastro v. Prudential–Bache Sec., Inc., 764 F.2d 939, 944 (3d Cir.1985).

3

A valid complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." FED.R.CIV.P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Iqbal clarified that the Court's decision in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) "expounded the pleading standard for 'all civil actions.'" Iqbal, 556 U.S. at 684.

The Court in Iqbal explained that, although a court must accept as true all of the factual allegations contained in a complaint, that requirement does not apply to legal conclusions; therefore, pleadings must include factual allegations to support the legal claims asserted. Id. at 678, 684. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678 (citing Twombly, 550 U.S. at 555); see also Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir.2008) ("We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests." (citing Twombly, 550 U.S. at 556 n.3). Accordingly, to survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). To evaluate whether a plaintiff has met this standard the Third Circuit has instructed:

> First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir.2010) (citations, alteration, footnote, and internal quotation marks omitted).  In doing so, the court must "also disregard 'naked assertions devoid of further factual enhancement.'"  Id. at 131 (quoting Iqbal, 556 U.S. at 678).

## V.     DISCUSSION

The ADA prohibits employers from discriminating against "a qualified individual on the basis of disability."  42 U.S.C. § 12112(a).  The Act defines a "qualified individual" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions" of the job.  42 U.S.C. § 12111(8).  The protections of the ADA are not limited to disabled employees.  "Discrimination" includes adverse employment actions against qualified individuals because of their association with a disabled individual.  42 U.S.C. § 12112(b)(4).  Specifically, the Act provides that employers are prohibited from "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association."  Id.  Accordingly, the ADA prohibits employers from taking adverse employment actions against employees because of their own condition, as well as employees deemed protected "because of the known disability of an individual with whom the qualified individual is known to have a relationship or association."  Reddinger v. Hosp. Central Servs., Inc., 4 F. Supp. 2d 405, 408 (E.D. Pa. 1998).  This type of discrimination has been referred to as "association" discrimination.  See Dollinger v. State Ins. Fund, 44 F. Supp. 2d 467, 480 (N.D.N.Y. 1999).

The ADA also protects against retaliatory action, stating that "no person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by" the ADA.  42 U.S.C. § 12203(a).

Ms. Tyson brings claims under the ADA for both associational discrimination and retaliation. The Court takes each claim in turn.

**A.      Plaintiff's ADA Associational Discrimination Claim Fails as a Matter of Law**

The ADA's "association provision" protects qualified individuals from employment discrimination based on the "known disability of an individual with whom the qualified individual is known to have a relationship or association." 42 U.S.C. § 12112(b)(4). While the Third Circuit has not enunciated a test for purposes of establishing associational discrimination,[1] it has enumerated certain circumstances under which a plaintiff might establish such a claim:

> (1) termination based on a disabled relative's perceived health care costs to the company; (2) termination based on fear of an employee contracting or spreading a relative's disease; (3) termination because an employee is somewhat distracted by a relative's disability, yet not so distracted that he requires accommodations to satisfactorily perform the functions of his job.

Erdman v. Nationwide Ins. Co., 582 F.3d 500, 511 n.7 (citing Larimer v. Int'l Bus. Machs. Corp., 370 F.3d 698, 700 (7th Cir. 2005)).

District courts in this Circuit have provided:

> [I]n order to establish a *prima facie* case for discrimination by association and survive a motion to dismiss, a plaintiff must prove that: (1) he was qualified at the time of the adverse employment action; (2) he was subject to an adverse employment action; (3) at the time of the adverse employment action, the plaintiff was known by his employer to have a relative or an associate with a disability; and (4) the adverse employment action occurred under circumstances raising a reasonable inference that the disability of the relative or associate was a determining factor in the termination decision.

---

[1] The Court of Appeals for the Tenth Circuit has, however. See Den Hartog. V. Wasatch Acad., 129 F.3d 1076, 1085 (10th Cir. 1997).

Pollere v. USIG Pa., Inc., No. 15-2421, 2015 WL 9260053, at *3 (E.D. Pa. Dec. 18, 2015) (citing Barthalow v. David H. Martin Excavating, Inc., No. 5-2593, 2007 WL 2207897, at *3 (M.D. Pa. July 30. 2007).

With respect to the third and fourth requirements, a plaintiff must show a "specific association with a disabled individual" and that the adverse employment decision was based on "unfounded stereotypes and assumptions arising from the employees' relationships with particular disabled persons." Oliveras-Sifre v. Puerto Rico Dep't of Health, 214 F.3d 23, 26 (1st Cir. 2000); see also Erdman, 582 F.3d at 510-11 (holding an employer's adverse employment action must be motivated by "unfounded stereotypes or assumptions . . . about care required by disabled persons"). The nature of the relationship in question need not be familial. See 29 C.F.R. § 1630.8 (indicating a "family, business, social or other relationship or association").

An ADA associational discrimination claim cannot be established by general "advocacy on behalf of individuals with" disabilities. Oliveras-Sifre, 214 F.3d at 26 (rejecting association discrimination claim where plaintiffs alleged they were punished for their advocacy on behalf of AIDS patients); see also Valenti v. Massapequa Union Free Sch. Dist., No. 4-5271, 2006 WL 2570871, at *14 (E.D.N.Y. Sept. 5, 2006) (collecting cases and dismissing plaintiff's association discrimination claim where plaintiff only claimed "he was engaging in a protected activity when he 'advocated' for his disabled students").

While the Third Circuit has not definitively so held, district courts in this Circuit have adopted the principle. See Lande v. City of Bethlehem, No. 7-2902, 2010 WL 5173154, at *10 (E.D. Pa. Dec. 10, 2010) (rejecting associational discrimination claim based on plaintiff police officer's advocacy on behalf of a disabled arrestee because plaintiff failed to demonstrate a "sufficiently close relationship" under the ADA); see also Chan v. County of Lancaster, No. 10-

7

3424, 2013 WL 2412168, at *25-26 (E.D. Pa. June 4, 2013) (granting summary judgment on plaintiff's associational discrimination claim where plaintiff's claim "rest[ed] upon the theory that she was fired in retaliation for her efforts, on behalf of disabled individuals," which is not covered by the association provision of the ADA).

The Court is also persuaded by the Fourth Circuit's decision in Freilich v. Upper Chesapeake Health, Inc., 313 F.3d 205 (4th Cir. 2002). In Freilich, the plaintiff physician was terminated by her employer hospital. Freilich, 313 F.3d at 209. In her complaint alleging, among other things, a claim for associational discrimination under the ADA, the plaintiff argued that she was discriminated against because she refused "to end her advocacy on behalf of the dialysis patients' rights that were being violated" and was denied various privileges because of "her association with and her relationship to patients with disabilities." Id. at 216 (internal quotation marks omitted). The Fourth Circuit disagreed, concluding "such generalized references to association with disabled persons or to advocacy for a group of disabled persons are not sufficient to state a claim for associational discrimination under the ADA." Id. As "[e]very hospital employee can allege at least a loose association with disabled patients," allowing the plaintiff physician "to proceed on such a basis would arm every hospital employee with a potential ADA complaint." Id.

The Fourth Circuit was unwilling to take that step, as is this Court. As in Freilich, Ms. Tyson has alleged only loose associations with Access's disabled clients. Ms. Tyson alleges that her "association with and advocacy for her disabled clients was the reason Defendant engaged in adverse employment actions towards her." (Compl. ¶ 26). This is precisely the type of associational discrimination claim that the Fourth Circuit recognized was for the Congress, and not the courts, to authorize.

8

In addition, Ms. Tyson has failed to plausibly allege a specific association with a disabled individual. Ms. Tyson relies primarily on Haire v. BIOS Corp., No. 8-336, 2009 WL 484207 (N.D. Okla. Feb. 26, 2009), which involved a plaintiff who worked for a company providing aid to disabled people. However, unlike the facts proffered in Ms. Tyson's Complaint, the plaintiff in Haire "worked closely" with a particular disabled individual "for several years," maintaining both a working and personal relationship with him. Haire, 2009 WL 484207, at *4. By contrast, Ms. Tyson's Complaint even construed in a light most favorable to her, does not allege a close relationship with *any* of her disabled clients.

Accordingly, because Ms. Tyson has failed to allege that she had a relationship or association with a disabled individual, Ms. Tyson's associational discrimination claim fails as a matter of law.

**B.      Plaintiff's ADA Retaliation Claim Fails as a Matter of Law**

Ms. Tyson's claim for retaliation under the ADA fails as a matter of law because she has not alleged that she was engaged in a protected activity. To establish a prima facie case of retaliation, a plaintiff must allege: "(1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." Krouse v. Am. Sterilizer Co., 126 F.3d 494, 500 (3d Cir. 1997). The Third Circuit has established that "protesting what an employee believes in good faith to be a discriminatory practice is clearly protected conduct." Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1085 (3d Cir. 1996) (citing 42 U.S.C. § 2000e-3(a)). A plaintiff need not establish that the conduct she opposed actually constituted a violation of the ADA as long as she alleges "the predicate for

9

a reasonable, good faith belief that the behavior she is opposing violates the ADA." Freilich, 313 F.3d at 216.

Here, Ms. Tyson's proffers that the "protected activity" in which she engaged was her opposition to Access's patient care decisions. Specifically, Ms. Tyson alleges that she complained after the three cited instances in which Access prevented her from advocating for the rights of disabled clients: (1) when Access demanded a disabled patient with cerebral palsy be placed in a nursing home; (2) when Access required Ms. Tyson to take the cost of bed bug removal for a disabled client with OCD from the provider; and (3) when Access demanded that Ms. Tyson prohibit a client with slight mental retardation from driving. (Compl. ¶ 13).

However, these allegations do not amount to a "reasonable, good faith" belief that Access's conduct violated the ADA; as such, Ms. Tyson has failed to allege that she was engaged in a protected activity. This Court adopts the conclusion reached by the Fourth Circuit in Freilich that a plaintiff cannot reasonably believe her disagreements with her employer over the level of care being provided to some patients, and the expenditures of resources therefor, constitute a violation of the ADA. Id. at 217 (affirming district court's dismissal of plaintiff's ADA retaliation claim and noting "Congress declined to give courts a mandate to arbitrate such disputes"); see also Oliveras-Sifre, 214 F.3d at 27 (affirming district court's dismissal of plaintiffs' ADA retaliation claim, stating the plaintiffs' "vague allegations regarding policy positions they took . . . are insufficient to demonstrate that they engaged in protected conduct"). Ms. Tyson's alleged complaints are similarly vague and, considered in the light most favorable to her, amount only to disagreements over patient care and expenditure decisions that are not protected conduct under the ADA.[2]

---

[2] The Court recognizes that Ms. Tyson may have a reasonable, good faith belief that an ADA violation occurred if her disabled clients had "been deprived of a benefit or opportunity provided to non-disabled [clients] or a group of

10

Accordingly, Ms. Tyson's claim for retaliation under the ADA fails as a matter of law because she has not alleged that she was engaged in a protected activity.[3]

## VI.   CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss Plaintiff's Complaint in its entirety will be **GRANTED WITHOUT PREJUDICE**.  The Court will allow Plaintiff twenty-one (21) days to file an Amended Complaint if she believes she can cure the defects stated above.

An appropriate Order follows.

O:\CIVIL 15\15-4653 tyson v access servs\MtD Memo.docx

---

[clients] with some other category of disability, because of their disability." CG v. Pa. Dep't of Educ., 734 F.3d 229, 236 (3d Cir. 2013).  In her Complaint, however, Ms. Tyson does not allege that the benefits deprived to her clients were provided to other disabled clients, or that any such distinction in the services provided was based on "the nature of [the clients'] respective disabilit[ies]."  Id. at 236.  Absent such allegations of differential treatment based on disability, Ms. Tyson could not have had a reasonable belief that Access's conduct violated the ADA.

[3] As the Court has dismissed Ms. Tyson's ADA retaliation claim, Access's argument that she is not entitled to recover any damages will not be addressed in this Memorandum.  However, the Court notes that if Ms. Tyson chooses to amend her Complaint and the retaliation claim does proceed, she can recover for back and front pay for her retaliation claim against Access.  See Kramer v. Banc of Am. Secs., LLC, 355 F.3d 961, 964 (7th Cir. 2004) (stating "a party making a retaliation claim against an employer under the ADA" is entitled to "certain equitable relief including, but not limited to, back pay") citing 42 U.S.C. § 2000e-5(g)(1)); see also Shellenberger v. Summit Bancorp, Inc., No. 99-5001, 2006 WL 1531792, at *4 (E.D. Pa. June 2, 2006) (Baylson, J.) (stating plaintiffs in ADA retaliation cases "may seek only equitable remedies" including those "provided by § 2000e(5)(g)").